Good morning, Your Honors. May it please the Court, Counsel. My name is Joe Nylan. I practice with the firm of Gregerson, Rosso, Johnson, Nylan here in Minneapolis. My firm represents the appellant, Granite Re, in this matter. The matter is before the Court on an appeal from a grant of a Rule 12 motion. The standard of review is de novo. With all due respect to the Court, if you on or before December 31 of this year ask me to pay you one dollar, I will do that. Did we just enter a contract? Was there a meeting of the minds? Was there mutual consent? Was there consideration? And I don't mean to be glib, but that's how simple our letter of credit is in this case. Citizens Credit Union said to Granite Re, if before July 6th you ask me, I will pay you $385,000. That unilateral promise does not constitute a contract under any common law principles, under any definition, under any case I've seen. There was a contract between, and the parties didn't really brief this, but there was a contract between Vortex and the bank, wasn't there? They paid. They paid to have the letter of credit issued. You know, I assume there was, Your Honor, and I can tell you that under North Dakota, hang on just a second. Well, having represented banks in many standby letter of credit situations, I can guarantee you there was a contract between the bank and its customer. It may not be a separate contract, but it's contained within the contractual relationship. I agree with that. I'm assuming there is. Here's the problem I'm having with that then. If you read the language, the statutory language, it says disaffirm or repudiate any contract or lease. And if there was a contract between Vortex Drilling and the bank, they can repudiate that contract, which includes the promise to pay your client. They certainly can repudiate that contract. That's got nothing to do with the letter of credit that they extended to my client. My client did not enter into a contract with that bank. But if they repudiate the underlying contract, doesn't that repudiate the obligation to pay as well? No. Because isn't a letter of credit really like... There was a previous case called Moog, and in Moog, it was a personal jurisdiction case, this court described the obligation as contractual in nature. But I think really what it is, is it's like a third-party beneficiary type of situation. So if you eliminate the main contract, the third-party beneficiary obligation falls away. This isn't a third-party beneficiary. This is a stand-alone, individual, unilateral promise. This isn't a third-party beneficiary. And if they decided to repudiate that contract, that's up to them. This court actually kind of foresaw what we're talking about today. And it's not mentioned in the Respondent's Brief, but in the Lease America case that this court issued in 1991, you said, we acknowledge authority that a letter of credit is not a contract. Now, that was not the issue in that case, so it wasn't actually decided in that case. But you foretold that this issue was going to be here. And the primary case that the Respondents rely on is this credit union case. It's a decision out of... It's a district court decision out of New Hampshire from 1993. The credit union case, first of all... That was an FDIC case. That's an FDIC case, right. It goes sideways for a number of reasons. It acknowledges that there is this body of law that says LOCs aren't contracts. It talks about that. What's the effect of this decision if we affirm it? The effect of it is you cannot repudiate a letter of credit. The effect in this credit union's insolvency. And the FDIC was much different. The FDIC was sued in its corporate as well as its administrative capacities. The court treated the two separately, parsed out the differences. Sure. So what do we have here? We have personal liability of the board. Is that what you're... Well, the board has to pay the letter of credit, yes. Not out of the assets? Out of the assets that it is managing, yes. But only out of those assets? Yes. Nobody talks about... There's no personal liability for the board. But if we affirm what happens? If you affirm what happens, I assume... Well, if you affirm, the case will probably be over unless we go to the Supreme Court. Is there a claim left against the estate? Granite is out. Against the insolvent credit union. Granite is out. Granite's only claim is through the letter of credit. We don't have an independent... No, no. Okay, so the letter of credit has been repudiated. Now what's left of a claim against the credit union's assets? I see what you're asking. You're asking about whether or not the repudiation has created damages to which Granite would be entitled. And the answer to that... It seems to me at least a possibility if a standby letter of credit puts a liability on the books of the credit union on the day it's issued. All sort of an accelerated liability without regard to timing because you don't know when the draw is going to be made. So why isn't that a claim against the assets of the credit union? I couldn't agree more, Judge. But how do we know that the effect of repudiation is to eliminate that claim? Well, that's what the board's position is. It's not here. They don't want to talk about that. They just want to say affirm. Absolutely. I'm here to find out what that means. Why can't a different... Whether or not it was a contract or not, assuming it was a contract, why isn't, from a financial standpoint, why isn't it still a claim against the state? They're pulling a gotcha on it. I don't know what they want to do, but how does the law parse this out? It's not like the FDIC case. It's not like the FDIC case? The FDIC case against corporate was for troubled assets that the FDIC transferred to its corporate capacity. And that could then be sued, not successfully in that case. But is that the situation with the credit union's administration of insolvent credit unions or not? Is there a corporate side of the board that will wind up with whatever gets repudiated? I don't know the answer to that, Judge. I think the answer is no. So I think the FDIC regime is completely different. I can't read that case as authority. I don't understand what it's authority for. Here's why it's different from our situation. And I'll file a supplemental. Last night I found this new case. And it's from the Eastern District of Louisiana Lexan Insurance versus FDIC 2019 Westlaw 4690412. That was filed on September... Put it in the 28th. I will. Is it unpublished or published? I noticed it was 2019. It's published. Okay. It's published. And the judge in this case I think gets directly to what you're talking about. In credit union, there were no damages that were incurred before the filing, before the receivership was filed. In our case, Judge Hovland followed that by saying there's this triggering event. If you go back and look at the credit union case, the triggering event doesn't appear anywhere in the statute. The FDIC put it in a letter. The judge in New Hampshire took that language that there has to be a triggering event and applied it to the cutoff date for damages. Judge Hovland in our case took the triggering event language from the judge in New Hampshire and said, well, the triggering event is the call down, the site draft. There were no damages then. The damages in our case, as pled in Appendix 6, Paragraph 14 of our complaint, said all of our damages were incurred before the date, the cutoff date for damages. That's where the confusion is. Judge Hovland in our case said, you don't get any damages, this is the FDIC's position, you don't get any damages because you didn't send in the, you don't get any payment because you didn't send in your site draft before the filing. Inconsistent with credit union and inconsistent with Lexon that I just cited, those bonding companies had not incurred damages before the filing. In our case, we had incurred all these damages before filing. I want to go back to the contract because there's one other thing that's bothering me. So if you look at Williston and Corbin on contracts, they characterize letters of credit and the relationship between those in favor, the beneficiary and the bank. And the way they do it is they say they're formal contracts. They're analogous to placing a seal on a contract, which replaced consideration. And they seem to say that the weight of authority goes that way. What is your best argument against that? Well, it's not just consideration, there has to be some mutual consent. There has to be a meeting of the minds. In a letter of credit situation, the issuer of the letter of credit never communicates with the bonding company. There's no direct communication. The bonding company goes to the contractor and says, if you want me to issue bonds, you've got to get me a letter of credit in this amount. He goes to the bank. Bank, I need you to send a letter of credit to the bonding company. So we never have any meeting of the minds. There's never any mutual consent between us. There's not even any documents between us. The only thing that happens is I get this letter of credit. It's your unilateral promise to pay me. That still gets me back. And maybe you didn't answer my question earlier, which is why is this not analogous to a third-party beneficiary situation, where what you're saying is right. I'm taking it as a given. Everything you just said is right. It seems to me that you're the third-party beneficiary of a contract that was entered into between the drain tile company and the bank. We're not a beneficiary. We're not part of that contract. We're not mentioned in that contract. There's nothing that ties us to the bank. Just like at the beginning of this argument, that's how simple the promise is. It's not more complicated than that. But when the bank and the drain tile company get together, they're not issuing it in favor of some unnamed third party. They're issuing it in favor of Granite Ray. So you are a beneficiary of that. Maybe not a third-party beneficiary, but certainly a beneficiary by terminology. We're clearly a beneficiary of that letter of credit. I will agree with that. I'd like to reserve the last minute and a half or so for rebuttal. Thank you. Ms. Coffin? Thank you, Your Honors. May it please the Court, opposing counsel. We have two questions here. Well, I have a question because it may... It's about the only thing that most troubles me. We are talking, although nobody's talking in these terms, about what Congress meant by the word contract. In that statute. And with that as a preamble, let me ask you, what is the Board's position regarding commercial letters of credit? In other words, if this letter of credit was a commercial letter of credit and the goods were in transit on the day of filing, on the critical day, would this decision apply to that? Yes, Your Honor. And therefore, Congress intended to wipe out the purposes of adopting, in United States law, the uniform customs and practices of the International Chamber of Commerce. Your Honor, I can't speak to that specific act. That's what we're talking about here. If this applies to commercial letters of credit, then you are putting at risk everything that's in transit in international trade. Well, Your Honor, may I address that? The issue here with respect to damages and what the beneficiary is entitled to is, what is the credit union's liability  as of the day before the conservator is appointed? Counsel, in that regard, how does the credit union account for a letter of credit on its balance sheet? That I cannot answer. Wouldn't it be a liability of some kind? Well, no, Your Honor. And the reason for that is it's important to bear in mind that the mere fact that there is a letter of credit out there in existence does not mean that it will ever be drawn upon. A letter of credit could be issued Well, of course. That's the commercial. The whole thing is that the goods in transit arrive and they're rejected by the buyer. Then there's a draw on the letter of credit. So that the shipper who relied on being paid without being paid in advance of transit is not left with goods overseas and no money. So if you say that all of those commercial letters of credit that are issued by your credit unions aren't worth the paper they're written on until the site draft is presented, you have wreaked havoc, potentially, on international commerce. Well, Your Honor. Has anybody thought about it? Did you really think in a moment that Congress intended that? In that instance, it is entirely possible that all those events could occur and for whatever reason the beneficiary might never draw on the letter of credit. Of course. Goods are accepted and the buyer pays. Or the beneficiary could choose to go after the customer of the issuer. There are a number of reasons why it could be that the issuer never has liability. The reasons for those commercial LCs are to shift the timing and locus of the risk so that commerce is encouraged. And if your client by declaring a credit union insolvent and invoking this discretionary authority to repudiate can interrupt any commerce that might be involved under a commercial LC, that's a big thing. That's a big deal. Well, and I believe you have to look at this in the context of the greater purpose of FREA and the interest involved there, which is to protect innocent depositors when a financial institution is troubled. And so there may be competing interests and I will not deny that there are winners and losers under this scheme but under this statutory scheme ultimately the conservator is tasked by statute with... I think you agreed with me we're probing the intent of Congress here. You're just saying my reading of the plain language of the statute means that they lose. And I'm saying is that necessarily plain meaning all that clear in this situation? Getting back to the question that you began with, what did Congress mean when it identified any contract? Did it mean a stamp or a letter of credit? It did. Do you have legislative history for that? Well, what I would suggest I didn't see it in the briefs is absent a specific definition of what is a contract courts look to the common law and the common law definition of a contract supports the inclusion of letters of credit. Pardon? No, wait. Yes. You just said what? The letters of credit weren't known to the common law. Well, if we look at, for example, Black's Law dictionary definition of a contract, it's a promissory agreement between two or more persons that creates, modifies, or destroys a legal relation. There can't be any question here that what we have is a promissory agreement between two or more people. Certainly, we have a clear contract between the issuer and its customer. I can certainly say you don't even know how this credit union accounted for on its books. I can say if it listed this as a liability on the date the LLC issued, then that ought to be controlling here. With all due respect, the bookkeeping And the timing is fine even given it's a contract. The bookkeeping of a distressed credit union and conservatorship is not the determinative factor under this statute. But the liabilities on the books don't matter. You're just talking about protecting depositors. The manner in which it's on the books does not go to the question of how the statutory scheme operates here. How often does this, I was just going back to a question that Judge Loken had asked earlier, how often I see the potential for massive disruption, but how often does a conservatorship of a credit union happen? I mean, how often does this agency do that? To my knowledge, it's rare. Okay, 1% of credit unions? Half a percent? 10%? I mean, do you have any idea? I'm just wondering. I don't know the answer to that. But one other issue is that here we had a conservatorship where the conservator was tasked by statute with managing the affairs of the credit union in a manner where it could continue on. This wasn't a liquidation. There are separate rules and procedures that apply to liquidation. So, to the next question then, I just want to bear down, you know, you have a plain language meaning of contract. The Supreme Court has said to us, when you have terms that are known at the common law and have acquired a common law meaning, you look at the common law. Now, Judge Loken is absolutely right that letters of credit are a commercial code type of thing. It's not a common law deal. Make your best argument, I've made some of those arguments, make your best argument that this is a contract and that it's covered by the statute. Well, first of all, we have the contract between the issuer and its customer that a letter of credit will be issued. The actual piece of paper, letter of credit, is nothing more than the written designation of the beneficiary under the agreement between the credit union and its customer, Vortex. It says a little bit more than that. I've read an awful lot of them, standby and commercial. So, just under the broad meaning of a contract, we have a contract. As is recognized by the official comments to the UCC, this is a contract. There are many cases that talk about how this is unusual, it's special, it's different. The reason that Article V of the UCC specifically provides that consideration isn't required is to preserve the enforceability of a letter of credit as a contract without having to get into this discussion of, well, what's the consideration, who has privity with whom, so on and so forth. A letter of credit may be unusual in its characteristics, which is recognized in the restatement of contracts, which also provides that it is a formal contract, though subject in some respects to special rules that depend on the formal characteristics and differ from those governing contracts in general, and then it specifically provides that letters of credit are a contract, though subject to different rules. I'm going to argue against what I was saying earlier on the beneficiary issue. My understanding of a letter of credit, and I'm pretty sure about this, is suppose the drain tiler comes into the bank and says, I don't like this anymore. I want my money back, and I don't want this letter of credit to stand, because I don't want this other I don't want Granite Ray to be able to get the money. My understanding is even if they give him his money back, even if they disavow the contract, the letter of credit stands. Granite Ray can come and give the site draft, get their money. Am I wrong about that? Well, putting it a different way, the issuer can't do that in the first instance. It's irrevocable. Right, it's irrevocable. And so, does that make it different, I guess, than an ordinary, the type of contract I've been talking about here? That would be one of the things that makes it different from an ordinary contract, yes. And does that take it outside of the I guess any contract would be broad language, but does that take it outside of the plain meaning of the word contract? No, it does not. It is still a contract. It is still a promise between parties that creates an obligation in this instance to pay money to the beneficiary upon fulfillment of the requirements of the letter of credit, which in this case is demand. Counsel, I'm going to go down a different trail here. Assuming that 1787 does apply here, doesn't this court have to read that statute in light of the takings clause of the Constitution? It seems to me that the government would be taking private property for a public purpose here, and you'd have to provide just compensation. And yet, that's not what's happening here. We'll know, Your Honor, because in this instance, as of the date of conservatorship, there was no liability whatsoever by the credit union to the beneficiary. That goes back to my question about how the credit union treats this on its balance sheet. It seems to me that it's got to be down there somewhere. This is a valuable item of personal property, is it not? Well, typically, it would be a contingent liability. How this particular credit union's books looked, I don't know. The government can just wipe that out without compensation. Well, there is a provision for compensation in the statutory scheme, and that is designed to limit the liability of the credit union. But there is a provision for payment of damages, and those damages are what is the credit union's liability prior to the appointment of the conservator. And in this case, there was none. There had been no demand made. But everyone agrees that had the presentation been made the day before the conservatorship started, they would have paid it. And your position is that the day after, they don't owe anything. It's a gotcha situation. Well, I wouldn't characterize it that way. I would say that's exactly what the statute states. The question is, what is the liability before the conservator is appointed? And in this case, there was none. No demand had been made. That's the statutory scheme. How is that different than someone who has an account at the credit union, and they've not made a withdrawal request yet for their money in their account? It's different because the deposit, the nature of a deposit is just simply different from a letter of credit. They're not comparable. And one other issue here that is worth noting is that by statute, this is a decision that's being made. Any contract does not include the depositor's contract with the credit union? Is that what you're saying? I guess the better way to say it is that it would include that. It includes any contract. The difference is, if a customer has money in their account, it's not going to be burdensome or affect the solvency of the credit union to allow them to withdraw their money. That's not realistically how this is operated. You're taking the position that the letter of credit has no value? I'm taking the position that in this case, the liability of the credit union to the beneficiary prior to the appointment of the conservator was zero. There was no liability, nothing owed, period. And the statute analyzes it that way, right or wrong. That is what the statute provides. And that's not a taking? No. Granted, Reed did not have an automatic entitlement to that money. There are conditions that must occur before it owns the money, so to speak. For example, with a commercial letter of credit, there are often documentary requirements. And there are plenty of cases affirming that strict compliance is required, not just substantial compliance. There are hoops that must be jumped through before a beneficiary is entitled to collect on a letter of credit. One of them is not the issue of repudiating the letter of credit. Again, this is a unique situation under a statutory scheme that was specifically devised as a way of saving these financial institutions from liquidation and preventing depositors from losing their money. I'm out of time. Thank you. Very good. Thank you. Is there a rebuttal time? Yep. Two points. One, if Congress had intended to include letters of credit or other duties, obligations that aren't contracts, they could have said so. Or, if they decided to expand the scope of the definition of contract beyond its normal parlance, they could have included a definition to do so. By adopting this language and narrowly limiting it to contracts or leases, which, as an aside, I find is kind of an anomaly. It seems to me to be redundant. But if they had chosen to not limit it, they could have. But the language in the statute limits it to contracts. That's what we're left with. And what you need to decide is whether or not a letter of credit is a contract. And it just doesn't meet all of the required elements for a contract. That's one. In that vein, take a close look at that Raffle case. That's the only case that really examines what contract means. All the other cases use the word. They say, well, the contract, this, this, this. But they don't look at whether a letter of credit has those elements. The second point was, follow that trigger event language through. It starts with the letter from the FDIC. The Credit Union Court adopts it. Hovland adopts it. That case did not have damages before the filing. Our case does. Thank you. Thank you, Counsel.